625 S.E.2d 919

In the Matter of NEWBERRY COUNTY MAGISTRATE
Mark E. ENGLISH, Respondent.

No. 26100.

Supreme Court of South Carolina.

Submitted Jan. 4, 2006.
Decided Jan. 23, 2006.

Henry B. Richardson, Jr., Disciplinary Counsel, of Columbia, for the Office of Disciplinary Counsel.

Mark E. English, of Newberry, pro se.

PER CURIAM.

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RJDE, Rule 502, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of an admonition, public reprimand, or a definite suspension for thirty (30) days pursuant to Rule 7(b), RJDE, Rule 502, SCACR. The facts as set forth in the agreement are as follows.

## FACTS

At the time of the submission of the agreement and, on the occasion of the occurrences discussed hereafter, respondent was a Newberry County magistrate. Respondent has since tendered his resignation as a Newberry County Magistrate effective at midnight on December 31, 2005.

*Matter I*

■ For quite some time and long prior to respondent's magisterial appointment, it was standard practice in the Newberry County Magistrate's Court for a representative of the Sheriff's Department to appear at bench trials in criminal cases in lieu of the appearance of the arresting officer and/or complaining witness(es) and to have the Sheriff's Department representative (who had no first hand knowledge of the case) testify for the State by reading the information from the incident report. If the defendant contested the charge, the case would be continued until the arresting officer and/or the complaining witness(es) could be present.[1] Respondent represents he followed the procedure described above as it was used by his predecessors and other Newberry County magistrates.

After discussing the Newberry County Magistrate Court's procedure and related legal principles with ODC, respondent now recognizes that the Magistrate's Court was, in effect, depriving *pro se* defendants of the constitutionally guaranteed right to confront their accusers. Respondent warrants that, in the future, he will cease allowing defendants to plead guilty or be convicted solely on the basis of incident reports.

ODC does *not* contend that it is judicial misconduct for a judge to allow hearsay testimony into a proceeding where there is no objection, even in cases where a defendant is *pro se*, but, instead, contends that fundamental principles of jurisprudence require some admissible evidence of the commission of a crime as a prerequisite to proceeding with a criminal case. In addition, ODC contends Magistrate's Court should not accommodate the prosecution and deprive *pro se* defendants of basic constitutional rights.

■■ The Court emphasizes that while a criminal defendant may plead guilty without any evidence of his guilt being submitted, a defendant who pleads not guilty cannot be convicted solely on the basis of a police incident report. The

---

1. The Newberry County Magistrate's Court recognized that, if the defendant was represented by counsel, counsel would likely offer a hearsay objection to the admission of information in the incident report (unless the report was introduced by the officer who prepared the report) and the objection would have to be sustained.

burden is on the government to prove a defendant's guilt beyond a reasonable doubt based on competent evidence.

## Matter II

■ Respondent terminated an employee due to her being unable to satisfactorily perform her duties as a result of personal, domestic difficulties. After notice of termination, respondent continued to pay the employee for several weeks for "accumulated sick leave" even though no evidence of illness was presented to respondent. Respondent signed or caused to be signed the employee's name to a time sheet submitted for payment of the sick leave. The actual document from respondent to Newberry County memorializing the termination was not transmitted until the sick leave had been exhausted.

Respondent now recognizes that the right to sick leave did not continue after the employee's termination, particularly in the absence of medical documentation supporting illness and that, at a minimum, he should have printed the employee's name, not had it signed in cursive to indicate the former employee had signed the document.[2] Respondent recognizes that the signing of another person's name in cursive to a time sheet and paying sick leave to a terminated employee who might or might not have been sick constituted judicial misconduct.[3]

## Matter III

■ Respondent loaned a motor vehicle to the same employee mentioned above while she was an employee of the Newberry County Central System.[4] While driving the vehi-

---

2. Respondent represents he had permission to sign the employee's name to the time sheet and that his actions were taken with the acquiescence of and/or instructions from county administrative personnel.

3. Respondent is romantically involved with the employee. Respondent and the employee have testified under oath that their romantic involvement did not take place until after the employee ceased to be an employee of the Newberry County Central Court System.

4. Respondent represents the employee was making payments on the vehicle in return for its use.

cle, the employee was involved in a motor vehicle accident and was issued a traffic citation by a South Carolina Highway Patrol trooper. The citation charged her with driving too fast for conditions.

Respondent asked the charging trooper if he could "help" the employee with the ticket as respondent believed the fine should have been suspended due to the fact that the employee was "a court employee who assisted troopers daily." According to respondent, the charging trooper indicated he was unwilling to "help" the employee with the ticket at that juncture because of the high visibility of the case, the known relationship between respondent and the employee,[5] existing animosity between respondent and another Newberry County Magistrate, Magistrate Beckham, and the fact that the motor vehicle the employee was driving was owned by respondent. The trooper offered to continue the matter and revisit its disposition if circumstances made doing so less subject to criticism.[6] The employee paid the fine marked on the ticket and respondent "signed off" on the ticket, causing it to be processed in a routine fashion.

Respondent now recognizes it was judicial misconduct to have had an *ex parte* communication with the charging trooper and to even suggest the trooper "help" the employee. Respondent further recognizes that employees of the judicial system or law enforcement are not any more entitled to "help" by virtue of their positions than other defendants and should, instead, be treated the same as any other person charged with an offense.

## *Matter IV*

██ Respondent received a traffic citation for driving too fast for conditions. The ticket was issued by a South Carolina Highway Patrol trooper as a result of a motor vehicle accident. The ticket was returnable before Magistrate Rushton. Re-

---

5. *See* Footnote 3.

6. Respondent represents he would not have normally discussed the matter with the trooper, but the trooper's supervisor advised respondent that he felt the ticket should be dismissed and was going to direct the trooper to do so.

spondent felt he was not at fault and planned to contest the ticket.

When the case was called to be heard before Magistrate Rushton, respondent entered a plea of not guilty. No witness appeared and the trooper announced that he did not wish to proceed with the prosecution without witnesses present since he did not witness the accident. Magistrate Rushton ruled the matter should be dismissed and/or found respondent not guilty on the date of trial.

Magistrate Rushton "signed off" so as to indicate "dismissed" or "not guilty" on the copy of the ticket sent to the South Carolina Department of Motor Vehicles (DMV) and on the trooper's copy of the ticket. However, the court record copy of the ticket could not be located until several months after Magistrate Rushton had ceased being a magistrate.

Respondent felt it was necessary to cause the court records to conform to the DMV records. For that reason, respondent telephoned Magistrate Rushton and Magistrate Rushton authorized that his name be "signed off" on the court's copy of the ticket. Respondent then instructed the employee mentioned above to sign Magistrate Rushton's name on the ticket showing it as "not guilty" and/or "dismissed" (as it should have originally been marked by Magistrate Rushton had it been available on the trial date). However, Magistrate Rushton was not present when the court copy of the ticket was signed and, in fact, was no longer a magistrate on that occasion.

Respondent now recognizes it was judicial misconduct to authorize the employee to sign Magistrate Rushton's name (even with his permission and only to conform to the actual disposition of the ticket) because a directive from the Chief Justice concerning the "signing off" of tickets only allows court employees to sign a judge's name on traffic tickets in the judge's presence. Respondent recognizes the correct procedure would have been to have Magistrate Rushton sign the court copy *nunc pro tunc* or, at least, mark it "s/Rushton [printed]" indicating it was being conformed to the original, rather than suggesting Magistrate Rushton had actually signed the ticket or that someone with his authority had signed it in his presence while he was a judge. Respondent

now recognizes that, with very few exceptions, no one can sign a judge's name to legal documents.

Moreover, the employee dated the court copy of the ticket as of the date of the trial (which would have been the date on the DMV and trooper's copies of the ticket). Respondent explains that the trial date is generally used by Newberry County magistrates when they "sign off" a ticket, regardless of the date on which the ticket is actually "signed off." ODC does not contest respondent's representation in this regard but provides the better practice would have been to place the notation "See reverse" by Magistrate Rushton's printed name and place an explanation and the actual "sign off" date on the reverse of the ticket.

ODC acknowledges respondent gained no advantage as a result of this matter.

## Matter V

A defendant was charged with driving under the influence. The defendant hired an attorney who filed a written request for a jury trial. The writing was placed in the court's case file. Notwithstanding the appearance of the attorney, the matter was scheduled for trial, but the attorney was not notified.

The arresting officer, the defendant, and defense attorney were not present when the case was called for trial. Respondent directed the officer be located. The trial was delayed and the officer was given the opportunity to appear. The officer advised respondent he was not in court when the case was called for trial because he had not been notified of the trial date. No similar effort was made to locate the defendant or to give the defendant an opportunity to be present. The defendant was convicted in his absence. In a later meeting with the defense attorney and the arresting officer it was determined that the defense attorney had not been notified of the trial and respondent, on motion of the defense attorney with consent of the arresting officer, reopened the matter.

Respondent now recognizes that any disparate treatment afforded the State and the accused gives an appearance of impropriety and suggests a bias towards the State. In the future, respondent represents he will be make equal effort to

locate absent defendants and absent law enforcement officers. In addition, he represents he will be more careful to determine whether or not defendants are represented by counsel and, if so, give notice to counsel of upcoming proceedings.

## Matter VI

A vending machine is operated in the lobby of the Newberry County Central Court for use by employees and the public. The machine is under respondent's supervision. The profits from the vending machine are applied to a canteen fund and used for miscellaneous office expenses such as flowers for employees who are sick or suffer losses of loved ones and social events to promote camaraderie among the staff at the Central Court.

While this is a fairly minor matter, ODC contends the practice is contrary to the general laws of the State which require that all income from the State and its political subdivisions be paid over to the county treasurer and that the only expenditures that may be made by public officials are those authorized in an annual budget approved by the governing body of the jurisdiction. In addition, ODC contends use of the vending machine proceeds is contrary to the spirit, if not the letter, of prohibitions in published cases of the Supreme Court of South Carolina and subsequent memorandums of the Chief Justice relating to judges using their position to collect money.

Respondent explains it is a common practice for the various departments of Newberry County to use vending machine profits for similar purposes and that no objection had been raised by any officials of the county prior to the complaint here. ODC does not dispute respondent's representation and concedes the infraction is well intended and follows a general practice in the various departments in Newberry County and possibly across the State. Nevertheless, ODC contends it is contrary to the statutory laws of this State. Respondent does not dispute this contention.

## Matter VII

When defendants failed to appear for traffic court and did not post bond, respondent would try the defendants in their absence, issue bench warrants, and send the NRVC

notice to the DMV.[7] In addition, respondent would either draw or cause to be drawn warrants charging the defendants with violation of South Carolina Code Ann. § 56-25-40 (1991) and then have a Sheriff's Department deputy sign a supporting affidavit.

ODC agrees that the failure to post bond or appear on the date of trial does, in fact, constitute a violation of Section 56-25-40 but contends it is the duty of law enforcement or prosecutors to seek the issuance of warrants, not judges. ODC contends judges should only issue warrants when approached by victims, law enforcement, or prosecutors presenting sufficient evidence for the issuance of warrants.

██ Respondent now recognizes that, except in the case of contempt of court, it is judicial misconduct for a judge to initiate criminal charges. However, in mitigation, respondent represents the practice of issuing warrants was initiated at the request of the Newberry County Sheriff's Department and that, prior to issuing these warrants, an employee of Court Administration advised him that he could issue warrants under these circumstances. Respondent asserts he issued only a few such warrants and immediately ceased the practice upon receipt of a complaint regarding the matter.

ODC does not dispute respondent's representations. The Court Administration employee confirms respondent's representation but states he did not intend to suggest warrants should be issued *sua sponte*. ODC contends magistrates should not draw warrants *sua sponte* and then seek to have a law enforcement officer sign the warrant affidavit. Instead, ODC asserts such warrants should be issued when an affiant with knowledge of a case appears before a judge seeking a warrant for the offense and gives an affidavit setting out probable cause.

### Matter VIII

██ Respondent's friend was charged with having an expired license tag on his motor vehicle. The friend did not

---

7. "NRVC" is the standard notation to indicate the defendant failed to appear or post bond and the administrative process should suspend the defendant's driver's license in accordance with applicable law.

appear at trial, but the records of the proceedings were marked "suspend fine as per [respondent]."

Respondent does not recall the exact details of this event; however, he represents that such a disposition was typical as Newberry County Magistrates suspended fines after defendants demonstrated that they had acquired license tags. Respondent states this procedure is fair since citizens often have problems obtaining tags from DMV in a timely fashion. Nevertheless, respondent acknowledges that, since his friend did not appear for trial, he either received information about his friend obtaining his license tag in an *ex parte* fashion or suspended the fine without knowing for certain that the tag had been obtained.

## Matter IX

Respondent released approximately nine (9) prisoners from the Newberry County Detention Center without any legal basis for doing so except for his own decision that this was necessary. These prisoners were serving sentences, many of which were imposed by other judges, including one serving a sentence imposed by a family court judge. Respondent represents he released these prisoners at the request of law enforcement because the detention center was being renovated and the adjoining county could not accommodate all the prisoners incarcerated at the Newberry County Detention Center. Respondent further represents he reviewed each of the prisoner's sentences and released those with the shortest sentences remaining and only those he felt were non-violent.

ODC does not contest respondent's representations concerning this matter and acknowledges that respondent's intentions were good and had a rational basis. However, respondent now acknowledges that, absent legal proceedings and appropriate authorization, he lacked authority to release the prisoners notwithstanding the county's problems in holding them while the detention center was being renovated.

## Matter X

While bond hearings are scheduled two (2) times per day in the Newberry County Central Court in accordance with the direction of the Chief Justice dated November 28, 2000, it is the practice of respondent and other magistrates in Newberry

County to hold special, unscheduled bond hearings in the interval between the scheduled bond hearings, making the scheduled bond hearings often unnecessary. Respondent represents that, when the special bond hearings are held, they are held for the entire detention center population in need of a bond hearing and not to benefit any special defendants.

Respondent now recognizes this practice may not fully conform to the directives of the Chief Justice concerning the conduct of bond hearings. In the future, respondent will promptly familiarize himself with the Chief Justice's directive and, thereafter, follow it to the letter or seek permission for a variance in procedures from the Chief Justice.

## Matter XI

Matthew Boland (Matthew) was charged by a South Carolina Highway Patrol trooper with driving 85 mph in a 55 mph speed zone. When the case was called for trial before respondent, Matthew was not present; no bond had been posted on his behalf. The trooper was present. Respondent proceeded to find Matthew guilty in his absence, made the notations "$425" (indicative of the amount of the fine imposed) and "NRVC," and had the ticket sent to the DMV. Because of the NRVC notation and $425 fine, the DMV wrote Matthew advising him that his driver's license had been suspended due to his failure to appear at trial or to post bond.

Unknown to respondent, Matthew was under the impression he did not need to appear at trial and that the ticket would be marked "not guilty" in his absence. Respondent reports that Magistrate Beckham later learned Matthew had been found guilty in his absence and sent word to respondent that the "General Attorney" had wanted the ticket marked "not guilty." Respondent represents the remark remains clear in his mind because of the reference to "General Attorney" rather than the proper reference to "Attorney General."

ODC asserts, and respondent does not dispute, that, prior to the date of trial, Matthew's father (Mr. Boland) called attorney William Franklin "Troup" Partridge, III (Troup) about the ticket. Troup referred the matter to his father, William Franklin Partridge, Jr., (Frank), an attorney practicing in Newberry County. At a regularly scheduled lunch meeting,

Frank told Magistrate Beckham (his son-in-law) that Frank needed to talk with the trooper about Matthew's ticket. Magistrate Beckham conveyed the message to the trooper who, according to Magistrate Beckham, responded "tell Frank not to worry about that ticket" or words to that effect. Somehow Matthew came to believe he did not need to appear or post bond in connection with the ticket. For purposes of this agreement, respondent does not contest these findings.

Respondent advises it was common practice in the Newberry County Central Court for the charging officer to fill in the information on tickets after magistrate's court was concluded based on the rulings of the hearing magistrate. To respondent's best knowledge, the trooper incorrectly filled out the information on Matthew's ticket after trial by checking the "appeared" block (when Matthew did not appear) and "not guilty" (when respondent had, in open court, found Matthew guilty as charged).

ODC has further determined:

– Mr. Boland called Troup after receiving notice of Matthew's license suspension from the DMV;

– Troup called Magistrate Beckham (his brother-in-law) and obtained information from the records of the central magistrate's court indicating respondent had found Matthew "guilty" and obtained copies of the Court's records (which indicates some confusion on the disposition of the ticket);

– Troup then telephoned respondent, purportedly to inquire as to the status of the ticket based on the records of the Newberry County Central Court; [8]

– respondent checked the records and advised Troup that the records indicated Matthew had been found "guilty" in his absence;

– Troup then told respondent that the ticket was supposed to have been marked "not guilty" and had been sent to the DMV in error;

---

8. ODC does not contend that respondent's conversation with Troup was an improper *ex parte* conversation inasmuch as respondent entered into the conversation with Troup only to discuss the status of the ticket, an administrative matter.

- respondent told Troup that, in his judgment, there was no error, that Matthew had not appeared or posted bond, and that he was not going to change his ruling; and

- respondent reports that, in the telephone conversation, Troup told him something to the effect that "*we* will just have to file a Writ of Mandamus" (emphasis in original).

ODC has further determined:

- Frank prepared legal pleadings, including an order for a Rule to Show Cause requiring respondent to appear at a hearing before Circuit Court Judge Wyatt Saunders the next business day;

- Judge Saunders reports he has been unable to determine how those pleadings came to be in his office and were left on his desk by an unknown person;

- Troup is Judge Saunders' former law clerk and, coincidentally (according to both Troup and Judge Saunders), dropped by Judge Saunders' chambers prior to the closing of the courthouse just to "say hello" to Judge Saunders the same day Judge Saunders signed the Rule to Show Cause order;

- Judge Saunders asked Troup to have the pleadings served on respondent;

- Sheriff Lee Foster reported he received a telephone call from Troup (whom Sheriff Foster knew personally and was aware of his employment by the State of South Carolina) who stated the Attorney General wanted the pleadings served on respondent that evening;

- Sheriff Foster dispatched a deputy sheriff to Frank's house, picked up the pleadings there from Troup, and had a deputy sheriff serve them on respondent; and

- the pleadings required respondent to appear before Judge Saunders the next business day to show cause why Matthew's tickets should not be changed to "not guilty." [9]

---

9. Respondent has no direct knowledge of many of the conclusions in this list but, for purposes of this agreement, does not dispute them.

Although he prepared the pleadings, Frank did not appear at the hearing before Judge Saunders. Matthew appeared *pro se*, along with his father. Respondent also appeared *pro se*. Judge Saunders did not ask Matthew if he appeared for trial or why he believed he would be found "not guilty." The transcript from the proceeding indicates Matthew "could not remember" who had given him copies of the materials presented to the circuit court. Judge Saunders asked respondent if it would be proper to "offer this citizen a trial." In response, respondent stated he was willing to "help" Matthew. Judge Saunders noted that pleadings did not bear any docket number and stated on the record that respondent "is willing to assist you" and volunteered that the circuit court was acting "no different in this than it would in other similar matters."

After the case was recessed, respondent, Matthew, and Mr. Boland went into the hallway to discuss the matter. Judge Saunders asked the trooper's supervisor who was also present in the courthouse for other purposes to participate in the discussion between respondent, Matthew, and Mr. Boland. The supervisor agreed that the 85/55 mph ticket (a six point ticket) against Matthew would be reduced to a two point violation (speeding under 10 miles over the posted limit) and the fine would be reduced in accordance with the reduced charges. Judge Saunders was advised the matter had been resolved and, thereafter, caused the records to reflect that Matthew had been convicted, pled guilty, or forfeited bond to a charge of speeding under 10 miles over the posted limit.

The very next day, Matthew appeared before respondent, accompanied by Frank, on two additional traffic charges. Respondent reduced these charges to "help" Matthew because of Matthew's increasingly poor driving record.

Respondent now recognizes it was judicial misconduct to negotiate a settlement with a defendant and his father even if encouraged to do so by the circuit court judge and even in the presence of and with the consent of the trooper's supervisor. Respondent has represented to ODC under oath that he did not feel any pressure by the circuit court judge but, instead, just wanted to "help" Matthew because of the obvious difficulties he would face due to the traffic tickets.

Respondent has been fully cooperative with ODC's inquiries in this and all other matters addressed herein and has amended his procedures to conform with applicable guidelines as he now understands them to be.

## LAW

By his misconduct, respondent has violated the following Canons of the Code of Judicial Conduct, Rule 501, SCACR: Canon 1 (judge shall uphold integrity of the judiciary); Canon 1A (judge should participate in establishing, maintaining and enforcing high standards of conduct, and shall personally observe those standards so that the integrity and independence of the judiciary will be preserved); Canon 2 (judge shall avoid impropriety and the appearance of impropriety in all activities); Canon 2A (judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 2B (judge shall not allow family, social, political or other relationships to influence the judge's judicial conduct or judgment); Canon 3 (judge shall perform the duties of judicial office impartially and diligently); Canon 3(B)(2) (judge shall be faithful to the law and maintain professional competence in it; judge shall not be swayed by public clamor or fear of criticism); Canon 3B(7) (judge shall not initiate, permit, or consider *ex parte* communications, or consider other communications made to the judge outside the presence of the parties concerning a pending proceeding); and Canon 3B(8) (judge shall dispose of all judicial matters promptly, efficiently, and fairly). Respondent admits that his misconduct constitutes grounds for discipline pursuant to Rule 7(a)(1) (it shall be ground for discipline for judge to violate the Code of Judicial Conduct) and Rule 7(a)(7) (it shall be ground for discipline for judge to willfully violate a valid court order issued by a court of this State) of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR.

## CONCLUSION

We accept the Agreement for Discipline by Consent and issue a public reprimand. Because respondent no longer holds his magisterial position, a public reprimand is the most

severe sanction the Court can impose for the misconduct addressed in this opinion. *See In re O'Kelley,* 361 S.C. 30, 603 S.E.2d 410 (2004); *In re Gravely,* 321 S.C. 235, 467 S.E.2d 924 (1996). Due to the gravity of respondent's misconduct, he shall no longer serve in any judicial capacity in this state without the Court's permission. Respondent is hereby reprimanded for his misconduct.

**PUBLIC REPRIMAND.**

TOAL, C.J., MOORE, BURNETT and PLEICONES, JJ., concur. WALLER, J., not participating.