648 S.E.2d 590

**In the Matter of William F. "Troup" PARTRIDGE, Respondent.**

**No. 26359.**

Supreme Court of South Carolina.

Submitted June 25, 2007.

Decided July 18, 2007.

Henry B. Richardson, Disciplinary Counsel, of Columbia, for Office of Disciplinary Counsel.

Desa Ballard, of West Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the agreement, respondent admits misconduct and consents to a definite suspension from the practice of law of up to one (1) year. He requests the suspension be made retroactive to the date of his November 3, 2006 interim suspension. *In the Matter of Partridge* 371 S.C. 20, 637 S.E.2d 309 (2006). We accept the agreement and impose a one year suspension. The suspension shall not be made retroactive to the date of respondent's interim suspension. The facts, as set forth in the agreement, are as follows.

## *FACTS*

Respondent was admitted to the South Carolina Bar in 2003. Initially, he was employed as a law clerk to Circuit Court Judge Wyatt Saunders. Thereafter, he was employed by the South Carolina Attorney General's Office.

During respondent's employment with the Attorney General's Office, Matthew Boland (Boland), a family friend, asked respondent to provide assistance in connection with a ticket issued in Newberry County. The ticket charged Boland with speeding 85 mph in a 55 mph zone, a 6 point violation. The ticket was returnable before Newberry County Magistrate Mark English.[1]

Respondent suggested Boland and/or Boland's father contact respondent's father, a lawyer who practiced law in Newberry County. Respondent believed that Boland and/or Boland's father contacted respondent's father but he had no actual knowledge of whether or not his own father assisted Boland until later.

It is now known that respondent's father had a conversation with his son-in-law, Newberry County Magistrate Joseph Beckham,[2] concerning the Boland ticket. Magistrate Beckham then had a conversation with the officer who issued Boland's ticket. As a result, the officer agreed to mark the ticket "not guilty."

Thereafter, Magistrate English heard the case against Boland. Boland did not appear at the hearing and the officer made no comment to Magistrate English when the case was called for trial. Magistrate English marked the ticket "425" and "NRVC" and sent it to the South Carolina Department of Motor Vehicles (DMV) for processing as a "guilty/defendant did not appear or paid [sic] fine" ticket case. The officer, however, checked the "appeared" box (which was not true) and the "not guilty" box on the ticket.

---

[1]. The handling of the traffic ticket has previously been the subject of two judicial disciplinary opinions. *See In the Matter of English,* 367 S.C. 297, 625 S.E.2d 919 (2006); *In the Matter of Beckham,* 365 S.C. 637, 620 S.E.2d 69 (2005).

[2]. Respondent's sister is married to Magistrate Beckham.

In June 2004, Boland's father contacted respondent. He told respondent he understood that Boland had been found not guilty, but that Boland had received notice from the DMV that his driver's license was going to be suspended because of the conviction.

Respondent personally visited the Magistrate's Office and obtained a copy of the ticket in issue. He discovered there was a discrepancy in the records. One ticket contained marks indicating Boland had appeared for trial and was found guilty and another reflected Boland had been found not guilty.

Respondent telephoned Magistrate English and inquired how Boland could address the discrepancy in the records. Respondent states he inquired if a petition for a writ of mandamus was the proper procedure for seeking to clarify the records concerning the ticket. Magistrate English informed ODC, however, that respondent threatened to file a petition for a writ of mandamus to correct the ticket. Other than the statements of Magistrate English and respondent, there is no evidence to substantiate either version of events.

Thereafter, respondent and Judge Saunders discussed the discrepancy in the tickets over the telephone. Initially, respondent told ODC he did not have a telephone conversation with Judge Saunders, but later acknowledged that he did have such a conversation.

Respondent believes he provided a copy of the ticket to his father. However, he may have given the ticket to Boland or Boland's father.

At approximately 1:00 p.m. on June 11, 2004, Boland came to respondent's office in Columbia to have his affidavit notarized. Respondent arranged for a co-worker to notarize the affidavit. Respondent represents that, at the time, he was unaware that his father had prepared pleadings,[3] including an affidavit, for Boland to file *pro se*.

On June 11, 2004, the pleadings were presented by someone to Judge Saunders for his signature.[4] The same day, Judge

---

**3.** The pleadings included a proposed rule to show cause order requiring Magistrate English to appear before Judge Saunders.

**4.** According to the Agreement, evidence is inconclusive as to how the pleadings reached Judge Saunders.

Saunders signed the proposed order requiring Magistrate English to appear before him the next business day for purposes of correcting the error in the records. The same day, respondent visited Judge Saunders' chambers and, at the judge's request, arranged to have the pleadings served on Magistrate English.

Respondent called the Sheriff of Newberry County regarding service, then delivered the pleadings to a sheriff's deputy for service on Magistrate English. The Sheriff states respondent advised him that the Attorney General wanted the papers served. Respondent denies having made this assertion. Other than the statements of the Sheriff and respondent, there is no evidence to substantiate either version of the events.

At the hearing held before Judge Saunders, Boland, *pro se,* appeared with his father. Neither respondent nor his father appeared at the hearing. After Judge Saunders suggested that Magistrate English, Boland, and Boland's father discuss the matter, Magistrate English changed the ticket to "not guilty."

In April 2005, ODC was conducting investigations related to Magistrates English and Beckham. Respondent was asked to voluntarily appear before ODC to give testimony detailing his knowledge of Boland's ticket.

On April 14, 2005, respondent voluntarily appeared before Disciplinary Counsel. He was sworn as a witness and gave testimony under oath. Respondent testified he did not know who had prepared the pleadings which were presented to and signed by Judge Saunders. Disciplinary Counsel asserts respondent did know who had prepared the pleadings, but intentionally withheld that information from ODC. Respondent claims he did not know his father had prepared the pleadings until he discussed the matter with his father after the examination. However, respondent acknowledges he was not fully forthcoming about his knowledge of Boland's ticket when he was examined under oath and that he testified he did not know the answers to certain questions when, in fact, he did.

When he was examined under oath by Disciplinary Counsel, respondent voluntarily produced certain documents he had in his possession related to Boland's ticket. One document provided to ODC (the letter from DMV to Boland requiring

him to surrender his driver's license) contained handwriting which had been obliterated using "white out." In response to questions from ODC, respondent represented he did not know who had placed the "white out" on the document. The information obliterated by the "white out" was facsimile information from the person who faxed the DMV letter to respondent and respondent's facsimile number at the Attorney General's Office which had been written on the document by its sender.

According to respondent, after providing his testimony in April, he spoke with his father and learned his father had prepared the pleadings. Respondent wrote ODC and requested an opportunity to correct certain answers he had given in his April examination.

On May 24, 2005, respondent was again sworn and examined under oath. Some of the answers he gave to the questions by ODC conflicted with answers given in the April 2005 examination. Respondent did, however, disclose that his father had prepared the pleadings for Boland.

At the May 2005 interview, respondent falsely stated he did not know until the pleadings had been served that they related to Boland and the ticket. However, at the previous April interview, respondent had testified he was surprised to see that the pleadings given to him by Judge Saunders on June 11, 2004 for filing and service related to Boland and the ticket. Further, respondent's father had stated under oath that he was present during respondent's telephone call to the Newberry County Sheriff to make arrangements for effecting service of the pleadings on Magistrate English and saw respondent holding the pleadings in his hand. Respondent acknowledges that he was aware when he filed the pleadings with the clerk and delivered them to a deputy sheriff (who came to his father's house to pick up the pleadings) that they were related to Boland and the ticket.

As part of a judicial grievance matter, Magistrate Beckham was examined under oath on May 26, 2005, in Columbia. After the examination, Magistrate Beckham met respondent at his home.[5] Respondent's father happened by respondent's

---

5. At that time, respondent and this wife, Magistrate Beckham's sister, resided in Columbia.

house. Respondent, his father, and Magistrate Beckham discussed the events related to Boland's ticket. Based on statements subsequently made by respondent's now estranged wife, ODC alleged respondent sought to instruct his father and Magistrate Beckham how to answer questions related to Boland's ticket so their explanations would be consistent. Respondent represents that the conversation began with Magistrate Beckham reciting what he recalled of the examination by ODC earlier that day, which led to a discussion among respondent, his father, and Magistrate Beckham as to what each of them recalled about the matter.

Respondent represents that he did not instruct anyone on how to answer questions and that he did not undertake any effort to make the stories consistent. Respondent points out that he, his father, and Magistrate Beckham had already testified under oath before ODC so all they were doing was comparing experiences. In sworn testimony before ODC, respondent stated he did not recall a "meeting" to discuss the ticket, but now recalls there was such a meeting. ODC believes that the meeting was a chance get together rather than a scheduled meeting.

## *LAW*

Respondent admits that by his misconduct he has violated the following Rules of Professional Conduct, Rule 407, SCACR: Rule 1.2(d) (lawyer shall not counsel client to engage in or assist client in conduct lawyer knows is criminal or fraudulent); Rule 1.7(a) (lawyer shall not represent client if representation of that client will be directly adverse to another client); Rule 1.11(d) (lawyer who serves as public employee shall not violate Rule 1.7, RPC); Rule 3.3(a) (lawyer shall not knowingly make false statement of material fact to a tribunal); Rule 3.3(d) (in *ex parte* proceeding, lawyer shall inform tribunal of all material facts which will enable tribunal to make an informed decision); Rule 3.5(a) (lawyer shall not seek to influence a judge by means prohibited by law); Rule 8.1(a) (lawyer shall not knowingly make false statement of material fact in connection with a disciplinary matter); Rule 8.4(a) (it is professional misconduct for lawyer to violate the Rules of Professional Conduct or knowingly assist or induce another to do so); Rule 8.4(d) (it is professional misconduct for lawyer to

engage in conduct involving dishonesty, fraud, deceit or misrepresentation); Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to the administration of justice); and Rule 8.4(g) (it is professional misconduct for lawyer to knowingly assist a judge in conduct that is a violation of the applicable rules of judicial conduct or other law). In addition, respondent admits that his actions constitute grounds for discipline under the following provisions of Rule 7, RLDE, Rule 413, SCACR: Rule 7(a)(1) (it shall be a ground for discipline for a lawyer to violate the Rules of Professional Conduct) and Rule 7(a)(5) (it shall be a ground for discipline for a lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute).

## *CONCLUSION*

We accept the Agreement for Discipline by Consent and suspend respondent from the practice of law for one (1) year. The suspension shall not be retroactive to the date of respondent's interim suspension. Within fifteen days of the filing of this opinion, respondent shall file an affidavit demonstrating he has complied with the requirements of Rule 30 of the Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.